MATTER OF N—

In DEPORTATION Proceedings

A-11500333

*Decided by Board October 27, 1961*

Misrepresentation—Materiality—Section 212(a)(19)—Failure to reveal arrest and pending criminal proceeding.

Respondent's willful nondisclosure in his visa application of an arrest three days earlier on a criminal charge of embezzlement is held to be a *material* misrepresentation within section 212(a)(19) of the Immigration and Nationality Act since the consular officer would not have issued the visa if the facts were known and would have postponed action on the application until there had been a final disposition of the pending criminal proceeding.

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(19)—Visa procured by fraud or misrepresentation.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry under 8 U.S.C. 1182(a)(20)—Immigrant visa not valid.

BEFORE THE BOARD

DISCUSSION: This case is before us on appeal from the special inquiry officer's decision of June 30, 1960, directing the respondent's deportation.

The respondent is a 39-year-old unmarried male, native and citizen of Ireland, who last entered the United States on August 22, 1958, at which time he was admitted for permanent residence as a quota immigrant. He had not previously resided in this country but had been here in 1955 for a visit. He was arrested in England on July 15, 1958, on a charge of embezzlement. The special inquiry officer found that the respondent willfully misrepresented to the consular officer, in his visa application on July 18, 1958, that he had never been arrested. On that basis, he sustained the two charges stated above. The only issues are whether the respondent is deportable and, if so, whether voluntary departure should be granted.

We have carefully reviewed the entire record. The respondent testified that from 1935 (when he was about 13 or 14 years old) until about July 18, 1958, he had been a member of a religious order

506

known as the Brothers of St. Francis Xavier. During the last six years, he had been Secretary of Clapham College. He stated that as such he was a civil servant employed by the government. The college was partly supported by government funds although the property belonged to the religious order.

The respondent testified that he was hired as Secretary of Clapham College by the local education office of the London County Council; that the council had sole jurisdiction over this college and hired and discharged teachers and secretaries; that he received no salary from the college; that he was an employee of the London County Council; and that he received from the London County Council monthly salary checks which were made out in his own name. He also stated that this salary belonged to him although it was pooled in one bank account with the salaries received by other brothers. During the six years that the respondent was Secretary of Clapham College, his salary checks which were deposited in this bank account amounted to about 2,000 pounds. He and Brother Peter (Mr. Poynton) were authorized to draw checks on the account.

Over a period of about six months prior to July 1958, the respondent withdrew approximately 750 pounds from the account but he returned about 550 pounds. On July 15, 1958, he was arrested on a charge of embezzling 200 pounds from the college. He stated that he did not consider that he was guilty of embezzlement because the funds he withdrew for his own use were really his own money that he had deposited. He testified that after his arrest representatives of the London County Council inspected his books and cleared him of any charge of improper conduct or embezzlement and that Mr. Poynton, the headmaster, who had made the complaint against the respondent, stated that he was going to drop the charge. However, the respondent did not produce confirmation of this from Mr. Poynton or any other person, and Exhibit 7 shows that the criminal charge against the respondent was still pending in February 1960.

When this case was previously before us on July 2, 1959, we directed that the proceedings be terminated. On November 19, 1959, the Service filed a motion for reconsideration. The Board addressed a letter to the Department of State on December 31, 1959, with a view of obtaining certain additional information. Following receipt of a reply from the Department of State on March 30, 1960, we entered an order on April 18, 1960, reopening the hearing, and it is from the special inquiry officer's subsequent decision adverse to the alien that this appeal was taken.

The respondent again testified during the reopened hearing. The principal new testimony was that, in addition to withdrawing funds from the checking account for his use, it was the practice that he should also withdraw funds upon the request of the other brothers

who had money deposited in it; that he recorded all the sums withdrawn in the account books; that the books were examined monthly by his superior; and that it was due to his having recorded the amounts he had withdrawn that his superior became aware of these withdrawals.

With the exception of the respondent's testimony, the only additional evidence which was made part of the record during the reopened hearing was Exhibit 7. It includes a copy of the respondent's visa questionnaire which was received by the American Visa Section on May 27, 1958. This contains the respondent's statement in Item 30 that he had never been arrested, which statement was correct as of that date.

Exhibit 7 also contains a memorandum dated February 29, 1960, by the consular officer (L—L—) who interviewed the respondent on July 18, 1958, and issued the visa to him. In her memorandum, L—L— stated that, inasmuch as police records are not available in the United Kingdom, applicants for visas are questioned very closely concerning offenses and that each applicant is asked the following three questions in this connection: "Have you ever been involved with the police in any way whatsoever? Have you ever appeared before a police constable, judge or other law enforcement officer for any reason whatsoever? Have you even been charged with even a minor offense such as parking violation or traveling on the railway without paying the fare?" L—L— then said that the respondent must have answered "no" to all of these questions, because if he had answered affirmatively to any of them "he would have been required to supply the Embassy with a court record or related documentation."

In a deportation proceeding, the burden of proof is on the Government except that under 8 U.S.C. 1361 the burden of proof is on this respondent to show the time, place and manner of his entry. These facts are established by the respondent's immigrant visa. Under 8 U.S.C. 1252(b)(4), no decision of deportability shall be valid unless it is based upon reasonable, substantial and probative evidence. 8 U.S.C. 1182(a)(19) provides for the exclusion of an alien "who * * * has procured a visa * * * by willfully misrepresenting a material fact." Hence, in order to sustain the first charge stated above, the Government must establish by reasonable, substantial and probative evidence that the respondent (1) made a misrepresentation, (2) that it was made willfully, and (3) that it related to a material fact.

Counsel asserts that it was error to admit L—L—'s memorandum in evidence. However, it is well settled judicially that the strict rules of evidence need not be followed in immigration hearings. *United States ex rel. Tisi* v. *Tod*, 264 U.S. 131, 133 (1924); *United*

*States ex rel. Impastato* v. *O'Rourke*, 211 F.2d 609 (C.A. 8, 1954), cert. den. 348 U.S. 827. Accordingly, we hold that there was no error in the admission of this memorandum.

Counsel also contends that there are certain deficiencies in L—L—'s memorandum and that it has no probative value. It is true, as counsel asserts, that L—L—'s memorandum was not under oath; that it was not signed by her; that she did not state the source of her information; and that the memorandum is dated over one and one-half years after the respondent appeared before her for interview. While these technical objections are present, and although counsel objected to the admission into evidence of L—L—'s memorandum and the other papers comprising Exhibit 7, he made no request at the hearing nor in his brief that her testimony be taken by deposition or interrogatory. We conclude that this memorandum constitutes probative evidence that L—L— did ask this respondent the three questions mentioned above and that he answered in the negative.

The respondent admitted that his signature appears on the application for immigrant visa, and that this document was executed by him on July 18, 1958, before the American Vice-Consul at London, England. He also admitted that he was sworn by the consular officer, but apparently his claim is that he did not know that he was swearing relative to the truth of the contents of the visa application. The respondent testified that he did not read the visa application; that it was not read to him; that he did not know its contents; and that he was not asked on July 18, 1958, whether he had ever been arrested. As counsel has asserted, L—L— made no statement in her memorandum as to whether the respondent read the visa application nor whether it was read to him. However, we had made no specific request for this information in our letter to the Secretary of State on December 31, 1959 (part of Exh. 7).

A regulation of the Department of State [22 CFR 42.117(b)] provides that the applicant shall be required to read the application for an immigrant visa when it is completed, or that it shall be read to him in his language or that he shall otherwise be apprised of its full contents. The prior regulation [22 CFR 42.30(f)] was similar. There is a rebuttable presumption of official regularity which, under 22 CFR 42.117(b), raises the presumption that the consular officer informed the respondent as to the contents of the visa application, including the item concerning arrests. Considering the respondent's testimony and L—L—'s memorandum in the light of the presumption mentioned, we hold that the Government has established by reasonable, substantial and probative evidence that the respondent was sworn to his application for immigrant visa and that he was then aware that it contained the false statement that he had never been arrested.

509

The respondent knew that he had stated in the visa questionnaire that he had not been arrested. He does not say that when he subsequently appeared before the consular officer on July 18, 1958, he had forgotten the arrest which occurred only three days before that, but he claims only that he did not realize that the consular officer would be interested in the arrest. We are not persuaded by the respondent's claim and we conclude that the Government has established that the misrepresentation was made willfully.

The remaining question is whether the misrepresentation related to a material fact, and we have considered this case in the light of the Attorney General's decision of October 2, 1961, in *Matter of S— and B—C—*, 9—436. As we have indicated above, L—L—'s memorandum is to the effect that if the respondent had revealed his arrest, he would have been required to supply pertinent information from the court. We believe it is obvious that the consular officer would not have issued a visa to the respondent if she had known that a criminal charge of embezzlement was pending against him and that she would have postponed action on the application until there had been a final disposition of the criminal proceeding. Under these circumstances, we hold that the respondent's arrest was a "material fact" within the purview of 8 U.S.C. 1182(a)(19) and we conclude that the first charge is sustained.

The second charge is that the respondent was excludable at entry because his visa was invalid. Since we have held that the visa was procured by a willful misrepresentation of a material fact, it follows that the respondent was not in possession of a *valid* unexpired immigrant visa as required by 8 U.S.C. 1182(a)(20) and we hold that the second charge is sustained. The Service apparently contended that any incorrect statement in an application for immigrant visa renders the visa invalid. In view of the conclusion which we have reached, it is unnecessary to consider this contention of the Service and we decline to express any opinion on that point.

The Service insisted during the oral argument that it had not requested a reopening of the hearing and that we did not grant or deny the motion for reconsideration. Actually, on April 18, 1960, we specifically ordered that the motion of the Service be granted insofar as it requested reconsideration. Furthermore, the Service had stated in its motion of November 19, 1959, as well as during the last oral argument, that we acted prematurely in finding that the Government had not established that there was a willful misrepresentation inasmuch as the special inquiry officer had sustained counsel's objection to the Government's offer of a telegram dated August 29, 1958, from the American Embassy at London, England. Hence, we considered it necessary to reopen the hearing for the purpose of affording the Government an opportunity to again offer this evidence

510

and also to incorporate into the record the information which had been obtained from the Department of State.

In his brief on appeal, counsel stated that certain aspects of the case had been covered in his two prior briefs and during the hearing. In accordance with his request, we have taken these into consideration. Although counsel asserts that the statute provides that decisions upon review are to be based solely upon the evidence adduced at the hearing before the special inquiry officer, he neglected to furnish any reference to the section on which he relies. While 8 U.S.C. 1226(a) is to that effect, it relates only to exclusion proceedings whereas the respondent's case is a deportation proceeding. As to such proceedings, there is no similar statutory provision. In addition, the new evidence (Exh. 7) and the further testimony of the respondent were made part of the record in the reopened hearing before the special inquiry officer who then considered this evidence and rendered a new decision. Accordingly, we believe that the procedure followed was proper and this contention of counsel is dismissed.

Counsel urges that it is the rule in the courts that newly discovered evidence may be introduced only when it could not have been obtained by reasonable diligence before the order or judgment. Whatever the rule may be in the courts, 8 CFR 3.8 requires only that motions to reopen shall be supported by affidavits as to the new facts to be proved, and there is nothing therein which would limit it to such facts as could not have been adduced at the original hearing.

Counsel contends that no *statutory* authority exists for the Board to reopen a deportation hearing. 8 U.S.C. 1103(a) provides that the Attorney General "shall establish such regulations * * * as he deems necessary for carrying out his authority under the provisions of this chapter." In accordance therewith, 8 CFR 3.1(d)(1) provides that, with certain exceptions, this Board "shall exercise such discretion and authority conferred upon the Attorney General by law as is appropriate and necessary for the disposition of the case * * *." 8 CFR 3.2 provides, in part, "The Board may on its own motion reopen or reconsider any case in which it has rendered a decision," and 8 CFR 3.8 sets forth the procedure where a motion to reopen or to reconsider is filed on behalf of the alien or on behalf of the Service. Accordingly, we reject this contention of counsel.

It is also asserted by counsel that we should not have written to the Department of State and that, in doing so, we performed an investigative function. We do not regard the writing of a letter to the Department of State as the performance of an investigative function. In our order of April 18, 1960, we stated that, upon consideration of the motion of the Service dated November 19, 1959, we were

511

of the opinion that certain additional information from the Department of State was required. We believe it is apparent from our letter of December 31, 1959 (a copy of which is part of Exh. 7), that the information requested had a direct bearing on the issue in the respondent's case and that it did not constitute an attempt to obtain merely information adverse to the respondent. Some of the information received was advantageous to him. For example, the questionnaire corroborated his testimony that he had submitted this form prior to his arrest, and that the affidavit of support dated May 5, 1958, indicates that the consular officer must have been aware that his immigration to the United States was not being sponsored by his religious order. 8 CFR 3.1(d)(2) provides that the Board may return a case to the Service for further action without entering a final decision on the merits and 8 CFR 3.1(d)(1) confers upon the Board such authority of the Attorney General as is appropriate and necessary for the disposition of a case. Under these circumstances, we could have remanded the case to the Service to obtain the required information from the Department of State, and we fail to perceive any manner in which the respondent was prejudiced because the Board instead communicated with that Department. Hence, we dismiss this contention of counsel. His remaining contentions concerning the issue of deportability are without merit and do not require specific discussion.

The second issue in this case is whether voluntary departure should be granted. 8 U.S.C. 1254(e) permits the granting of that relief if the alien establishes good moral character for at least five years preceding his application. Since we have found that the respondent made a willful misrepresentation of a material fact to the consular officer on July 18, 1958, we hold that he fails to meet the good moral character requirement for that reason, and he is not eligible for voluntary departure. Accordingly, that application will be denied.

ORDER: It is ordered that the application for voluntary departure be denied.

*It is further ordered* that the appeal be and the same is hereby dismissed.