## MATTER OF MARTINEZ-SOLIS

### In Deportation Proceedings

### A-14615365

*Decided by Board March 22, 1972*

(1) The action of the Board in its prior order remanding the case to the special inquiry officer for further investigation and a reopened hearing, did not commingle its functions as an impartial adjudicator with those of a prosecutor and investigator; a contested deportation proceeding is in essence a quest for the truth, and the Board does not cease to be impartial merely because in its quest for truth it perceives avenues of unexplored inquiry.

(2) Under California law, a presumption of validity of a second marriage entered into by a married person attaches only if contracted in good faith, founded on the honest belief the former spouse is dead, and adequate investigation is made to verify this belief. Hence, a presumption of validity of the second marriage is precluded in the instant case where the alleged citizen wife was paid $215 to marry respondent about a week after she met him, there is no evidence her first marriage was dissolved by divorce or annulment, and there is no evidence an effort was made to learn if her first husband was dead.

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at time of entry—no labor certification.

ON BEHALF OF RESPONDENT:
Donald L. Ungar, Esquire
517 Washington Street
San Francisco, California 94111
(Brief filed)

ON BEHALF OF SERVICE:
R. A. Vielhaber
Appellate Trial Attorney

Stephen M. Suffin
Trial Attroney
(Brief filed)

The respondent appeals from the special inquiry officer's order of deportation dated May 24, 1971. The case was originally before us on November 27, 1970. Our order of that date remanded the case to the special inquiry officer for additional evidence. The respondent on this appeal excepts to that order.

The respondent, a native and citizen of Mexico, was admitted to the United States for permanent residence at the port of Calexico, California, on June 23, 1967. He presented an immigrant visa issued to him by the United States Consul at Monterrey, Nuevo Leon, Mexico on June 1, 1967 as the husband of Herminda

Martinez Borunda, a United States citizen. He was not required to present a labor certification under section 212(a)(14), Immigration and Nationality Act, as the spouse of a United States citizen.

The respondent refused to testify at the deportation hearings accorded him on July 9, 1969 and February 4, 1970. The primary evidence relied upon by the Service to support the deportation charge is a sworn statement taken from Erminda Duran, nee Borunda, on February 18, 1969 (Ex. 10) and an affidavit executed by her on April 1, 1969 (Ex. 5). The respondent's alleged wife stated under oath in her statement and affidavit that a prior marriage contracted by her had not terminated at the time she married the respondent.

Counsel for the respondent objected to the introduction of the statement and affidavit on the ground that he had no opportunity to cross-examine the maker (pp. 5 and 11, hearing of July 9, 1969). The hearing was adjourned to afford counsel an opportunity to take the wife's testimony by deposition. It later developed that the respondent's alleged wife could not be located.

This Board, after a thorough review of the evidence in light of the objections raised by counsel, remanded the case to the special inquiry officer with the request that the Service make a further attempt to locate the respondent's alleged wife in order that she could be cross-examined by counsel. We noted in our decision that there was no showing of an investigation in and around Stockton, California, notwithstanding the fact that the Service had been informed that "Stockton, California has in the past been her [respondent's alleged wife's] stomping grounds." We cited in support of our action a case which holds that the presumption of a valid marriage may be overcome if the divorce records from the residences of the parties involved reveal that there was no divorce from a former spouse and no annulment of the marriage, *Spradlin v. United States*, 284 F. Supp. 763 (D. Mont., 1968).

The respondent's alleged wife was thereafter located but counsel declined to cross-examine her. A search of the court records in Sacramento, Fresno and San Joaquin, California as well as a report from the Bureau of Vital Statistics, which maintains a centralized record of divorces in the State of California, failed to reveal that the respondent's alleged wife had obtained a divorce from her former husband (Ex.11).

Counsel maintains that our order of November 27, 1970, remanding the case to the special inquiry officer for further investigation and a reopened hearing had the effect of denying the respondent his right to a fair hearing before an impartial tribunal. It is the position of counsel that the Board's action commingled its functions as an appellate body and trier of fact with those of prosecu-

tor and investigator, thereby denying the respondent a fair hearing and rendering all subsequent proceedings invalid.

Counsel's charge that this Board deviated from its role of impartial adjudicator misconceives the nature of our function. The charge is based on the following chain of reasoning: (1) In deciding to rest on the original record, without seeking further to locate the missing witness, the Service made a deliberate prosecutive judgment to which it should be held. (2) The respondent had a right to have the deportation order assessed by this Board on appeal strictly on that record. (3) The respondent had a right to have the deportation order set aside and the proceedings terminated if, as he maintained, the record was inadequate to sustain the charge. (4) In remanding and directing that a further attempt be made to locate the missing witness, this Board overruled the Service's prosecutive judgement, thereby leaving its role of impartial adjudicator and assuming a prosecutive function.

A contested deportation proceeding is in essence a quest for the truth. The stakes are high; the Service has the duty of enforcing the law, and the alien's valuable right to remain here is threatened. We may not approach such an inquiry like an umpire at a sporting event, awarding the prize to the side that has scored the most points. The "sporting theory of justice" has long been disavowed by the courts and there is no reason why we should accept it. We do not cease to be impartial merely because, in our quest for the truth, we perceive avenues of inquiry not yet explored.

This Board is an appellate administrative body created to decide questions of law. Section 242(b)(4) of the Immigration and Nationality Act provides that "no decision of deportability shall be valid unless it is based upon reasonable, substantial and probative evidence." The Supreme Court has interpreted section 242(b)(4) to mean that no deportation order may be entered unless it is found by clear, convincing and unequivocal evidence "that the facts alleged as grounds for deportation are true," *Woodby* v. *INS*, 385 U.S. 276 (1966).

8 CFR 3.1(d)(2) provides that the Board may return a case to the Service for such further action as may be appropriate without entering a final decision on the merits of the case. When it is apparent from the record that the facts alleged as grounds for deportation may be proved or disproved by supplementing the record with additional evidence, we believe that in determining the truth, it is our duty both to the Government and the alien, in the administration of justice, to remand the case for such evidence. Our authority to reopen and remand a case for such a purpose has been sustained by the courts, *Tejeda* v. *INS*, 346 F.2d

389, 392 (C.A. 9, 1965); *Field* v. *INS,*313 F.2d 743 (C.A.3, 1963); *Wood* v. *Hoy,* 266 F.2d 825, 831 (C.A.9, 1959); *Tandaric* v. *Robinson,* 257 F.2d 895, 899 (C.A. 7, 1958). Cf. *United States* v. *Ramos,* 413 F.2d 743, 746 (C.A. 1, 1969).

Accordingly, we find no merit to counsel's contention that the Board's action in this case commingles its functions as an appellate body with those of a prosecutor and investigator. 8 CFR 3.1(d)(1) confers upon the Board such authority "as is appropriate and necessary for the disposition of the case." Cf. *Matter of N—,* 9 I. & N. Dec. 506, 511 (BIA, 1961).

Counsel also contends that, assuming the respondent had a fair hearing, the evidence of record fails to meet the exacting standard demanded by the Supreme Court in *Woodby* v. *INS, supra.* The primary evidence relied upon by the special inquiry officer includes the sworn statement taken from the respondent's alleged wife on February 18, 1969 (Ex. 10), an affidavit executed by her on April 1, 1969 (Ex. 5), and a report of investigation (Ex.11) dated April 16, 1971, to the effect that there is no record of her divorce in the State of California.

We reject counsel's contention that the evidence is insufficient to overcome the presumption of validity which attaches to the respondent's marriage to a citizen of the United States under California law. This presumption is not applicable here because, after a thorough investigation by the Service, there is no evidence that the first marriage of the respondent's citizen wife was dissolved by divorce or annulment, *In re Smith's Estate,* 201 P.2d 539, 540 (Sup. Ct. Cal., 1949); *Spradlin* v. *United States, supra.* Counsel also contends that there must be some proof that the alleged citizen wife's first husband was not living at the time of her marriage to the respondent. It has been judicially determined in California that in order for a presumption of statutory validity to attach to a second marriage entered into by a married person, the second marriage must have been contracted in good faith, founded on the *honest belief* that the former spouse was dead and that an adequate investigation had in fact been made to verify this belief, *Goff* v. *Goff,* 52 C.A. 2d 23, 125 P.2d 848, 851 (C.A. Cal., 1942).

We are satisfied from the evidence before us that the alleged citizen wife did not contract a marriage in good faith, founded on the honest belief that her former spouse was dead. There is no evidence of any investigation on her part to verify such belief. She stated in her affidavit of April 1, 1969 that the respondent paid her a total of $215 to marry him for immigration purposes. She also stated that she first met the respondent "about a week before [she] married him" (Ex. 5). Thus, the evidence before us precludes

the applicability of the statutory presumption of the validity of a second marriage.

The respondent's deportability has been established by evidence that is clear, convincing and unequivocal. The order of deportation is affirmed and the appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.