# In re Guo Yu LEI, Respondent

## File A42 733 363 - San Francisco

*Decided July 16, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A claim of ineffective assistance of counsel does not constitute an exception to the 180-day statutory limit for the filing of a motion to reopen to rescind an in absentia order of deportation under section 242B(c)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3)(A) (1994), on the basis of exceptional circumstances.

Nancy A. Fellom, Esquire, San Francisco, California, for the respondent

James S. Stolley, Jr., Assistant District Counsel, for the Immigration and Naturalization Service

Before:   Board En Banc: VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, and GRANT, Board Members. Concurring and Dissenting Opinions: ROSENBERG, Board Member; GUENDELSBERGER, Board Member. Dissenting Opinions: SCHMIDT, Chairman; VILLAGELIU, Board Member.

MATHON, Board Member:

In a decision dated September 14, 1995, an Immigration Judge ordered the respondent deported in absentia after he failed to appear for his scheduled hearing. On September 26, 1995, the respondent filed a motion to reopen, which was denied by the Immigration Judge. The Board affirmed the Immigration Judge's decision on April 30, 1996, and on September 30, 1996, the respondent filed this motion to reopen with the Board. The motion will be denied.

## I. PROCEDURAL HISTORY

The record reflects that the respondent and his first attorney appeared

113

at a hearing before the Immigration Judge on January 31, 1995. He conceded deportability on the charge under section 241(a)(1)(D)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(D)(i) (1994), but denied the remaining charges against him. The continued hearing was originally set for October 10, 1995, and the respondent's attorney was personally served with the notice of hearing in court. However, the hearing was later rescheduled for September 14, 1995. Notice of the rescheduled hearing was sent to the respondent's attorney of record by certified mail, and the signed certified mail receipt is included in the record. However, neither the respondent nor his attorney appeared for the September 14, 1995, hearing, and the Immigration Judge ordered the respondent deported in absentia pursuant to section 242B(c)(3) of the Act, 8 U.S.C. § 1252b(c) (1994).

On September 26, 1995, the respondent, through the same attorney, filed a motion to reopen requesting rescission of the in absentia deportation order under section 242B(c)(3)(B) of the Act, alleging that neither he nor his attorney received notice of the rescheduled hearing. On November 27, 1995, the Immigration Judge denied the motion after determining that sufficient notice had been provided to counsel in accordance with section 242B(a)(2) of the Act. *See also* 8 C.F.R. § 292.5(a) (1995) (providing that notice to counsel constitutes notice to the alien). The respondent timely appealed the Immigration Judge's decision, reiterating his lack of notice claim. On April 30, 1996, the Board dismissed the respondent's appeal.[1]

On September 30, 1996, the respondent, through new counsel, filed a motion to reopen with the Board. He now contends that his original failure to appear was due to "exceptional circumstances" under section 242B(c)(3)(A) of the Act.[2] The respondent concedes that the time limit for filing a motion seeking rescission of an in absentia deportation order on such a basis has expired. However, he contends that the time bar should not apply in this case, given the fact that the failure to timely file was due to the ineffective assistance of his former attorney. Specifically, he argues that due to his former attorney's lack of familiarity with immigration law, she failed to recognize the potential "exceptional circumstances" claim within the statutory time limit for such motions.

---

[1]The decision was affirmed with regard to the issue of lack of notice. However, we rejected that part of the Immigration Judge's decision which required the respondent to demonstrate prima facie eligibility for relief.

[2]Specifically, the respondent claims that his attorney's failure to provide him with notice of the hearing constituted ineffective assistance of counsel. Most of the respondent's motion is devoted to discussing whether the attorney's failure to notify the respondent can be considered an "exceptional circumstance" excusing his failure to appear. However, due to our disposition in this case, we do not reach the substance of the respondent's motion.

## II. ISSUE PRESENTED

The issue before the Board is whether a claim of ineffective assistance of counsel constitutes an exception to the 180-day time limit under section 242B(c)(3)(A) of the Act.

## III. APPLICABLE LAW

Section 242B(c)(3) of the Act provides for the rescission of a deportation order entered in absentia under section 242B(c)(1) as follows:

RESCISSION OF ORDER. — Such an order may be rescinded only —
(A) upon a motion to reopen filed within 180 days after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances (as defined in subsection (f)(2)), or

(B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) or the alien demonstrates that the alien was in Federal or State custody and did not appear through no fault of the alien.

Section 242B(c)(3) of the Act.

The use of the term "only" makes this the exclusive method for rescinding an in absentia deportation order entered pursuant to section 242B(c) of the Act. *See Matter of Gonzalez-Lopez*, 20 I&N Dec. 644, 646 (BIA 1993).

## IV. ANALYSIS

Section 242B(c)(3)(A) of the Act expressly requires that a motion to reopen based on exceptional circumstances be filed within 180 days of the in absentia order. The record in this case reflects that the order of deportation was entered on September 14, 1995. The respondent did not file his current motion until September 30, 1996, well beyond the 180 days allotted by the statute. Therefore, we find that the respondent is statutorily barred from rescinding the deportation order under section 242B(c)(3)(A).[3]

The respondent concedes that the time limit for filing a motion to reopen to rescind based upon exceptional circumstances has elapsed. However, he essentially urges us to create an exception to the 180-day rule,

---

[3]We acknowledge that the respondent's motion to reopen is timely under the regulations at 8 C.F.R. § 3.2 (1997), but we note that the issue of timeliness of the motion is governed by section 242B of the Act and not by the general regulations regarding motions found at 8 C.F.R. §§ 3.2, 3.23, and 242.22 (1997).

where the failure to timely file a motion to reopen is due to ineffective assistance of counsel. We decline to do so.

It is well settled that the language of the statute is the starting point of statutory construction. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). The plain meaning of the words used in the statute as a whole has been held to be the paramount index of congressional intent. *Id.* at 431; *Matter of W-F-*, 21 I&N Dec. 503, at 506 (BIA 1996), Moreover, it is assumed that the legislative purpose is expressed by the ordinary meaning of the words used. *INS v. Phinpathya*, 464 U.S. 183, 189 (1984); *see also Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996), *aff'd*, 141 F.3d 953 (9th Cir. 1998),

The language of section 242B(c)(3)(A) regarding the time limit within which a motion to reopen must be filed is clear on its face and unambiguous. It provides that an in absentia deportation order entered pursuant to section 242B(c) may be rescinded "*only upon a motion to reopen filed within 180 days* after the date of the order of deportation if the alien demonstrates that the failure to appear was because of exceptional circumstances." Section 242B(c)(3)(A) of the Act (emphasis added). The statute contains no exceptions to this time bar. Where the statutory language is clear, "that is the end of the matter" and we "must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984); *see also Matter of W-F-, supra*, at 506. Accordingly, we are bound to uphold and apply the plain meaning of the statute as written. Had Congress intended to provide for an exception to the 180-day time limit based on the ineffective assistance of counsel, it could have done so.

This conclusion is consistent with the overall statutory scheme of section 242B of the Act. Section 242B was added to the Act by section 545(a) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061-65 (enacted Nov. 29, 1990). *See generally Matter of Gonzalez-Lopez, supra*. It was enacted to provide stricter and more comprehensive deportation procedures, particularly for in absentia hearings, to ensure that proceedings are brought to a conclusion with meaningful consequences. *See Matter of Grijalva*, 21 I&N Dec. 27, at 31 (BIA 1995); *Matter of Villalba*, 21 I&N Dec. 842, at 847 n.2 (BIA 1997); 136 Cong. Rec. S17,109 (daily ed. Oct. 26, 1990); 136 Cong. Rec. H8630 (daily ed. Oct. 2, 1990). The 180-day time limit reflects congressional intent to bring finality to in absentia deportation proceedings.

Therefore, given that the statute is explicit in its requirement that a motion to reopen based on exceptional circumstances must be filed within 180 days of the in absentia order, and considering the legislative history of section 242B of the Act, we conclude that a claim of ineffective assistance of counsel is not an exception to the 180-day time limit imposed by section 242B(c)(3)(A) of the Act.

## V. CONCLUSION

Accordingly, we find the respondent is statutorily barred from rescinding the order of deportation based on "exceptional circumstances" pursuant to section 242B(c)(3)(A) of the Act, regardless of whether he can demonstrate that his failure to timely file the motion is attributable to ineffective assistance of counsel.[4]

**ORDER:** The respondent's motion to reopen is denied.

Vice Chairman Mary Maguire Dunne and Board Member Lori L. Scialabba did not participate in the decision in this case.

*CONCURRING AND DISSENTING OPINION:* Lory D. Rosenberg, Board Member

I concur in part and dissent in part.

Our obligation to enforce the terms of section 242B of the Immigration and Nationality Act, 8 U.S.C. § 1252b (1994), does not require us to enforce section 242B and its subsections narrowly and restrictively, and it does not preclude us from enforcing section 242B in its entirety, and consistently with the United States Constitution, guided by fairness and compassion. To the contrary. I agree with the majority that we are bound to uphold the statute as written. I cannot agree, however, that the majority's reading and interpretation of section 242B is true to the terms of the statute, consonant with constitutional due process protections, or consistent with agency precedent and authority.

The respondent in this case was represented by counsel and was present in court on January 31, 1995, with his attorney. The Immigration Judge continued the hearing and set October 10, 1995, as the next date on which the respondent was to appear before the Immigration Court. Then, something happened that the respondent had no reason to anticipate: 3 months later, on April 27, 1995, the Immigration Court sent a notice by certified mail to the respondent's attorney, rescheduling the hearing from October 10, 1995, to September 14, 1995. The respondent never received any notification that his continued hearing date had been canceled, and that he was expected to appear on a rescheduled date *prior to the originally continued date*, because that notice was sent only to his attorney, who never notified the respondent of the rescheduled date.

Twelve days after the Immigration Judge conducted the continued

---

[4]Given our holding in this case, we need not address whether the respondent has satisfied the criteria set forth in *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), for claims of ineffective assistance of counsel.

deportation hearing on September 14, 1995, in absentia, the respondent's former attorney filed a "motion to reopen," contending in a declaration that she had not received (actual) notice of the rescheduled hearing and that there was the "possibility of having confusion." *Compare* section 242B(c)(3)(A) of the Act (involving exceptional circumstances that prevented a respondent's appearance, requiring filing of such a motion within 180 days), *with* section 242B(c)(3)(B) (involving failure of proper notice that prevented a respondent's appearance, specifying that such a motion may be filed at any time). When the Immigration Judge denied that motion 2 months later, the respondent appealed, and when a panel of the Board upheld the denial 5 months after that, more than 180 days had passed. The respondent, through present counsel, filed a second motion under section 242B(c)(3), which is the subject of our decision today.

Although the respondent's former attorney did not assert previously that "exceptional circumstances" existed for the respondent's failure to appear, she admits, in the motion to reopen now before us filed by present counsel, that she was unfamiliar with the requirements of section 242B and did not prepare an adequate motion prior to the expiration of the 180-day period. The respondent's former attorney apparently failed to understand that the plain language of the statute had never been interpreted by the Board to grant a hearing to an alien who had not personally *received* notice of a rescheduled hearing, despite the language of section 242B(c)(3)(B), and she provided no claim or argument in favor of such a construction. She apparently was unaware of, or ignored, the regulations at 8 C.F.R. § 292.5(a) (1995), which provide that when a respondent is subject to any requirement of the Act, service on counsel of record satisfies service on the respondent.

She must not have known, or failed to understand, that she was deemed to have been given notice under our precedent decision in *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995), since notice of the rescheduled hearing had been sent to her by certified mail. *Cf. Matter of Huete*, 20 I&N Dec. 250 (BIA 1991). She therefore failed to address the fact that the responsibility to notify the respondent was hers alone, whether she received actual notice or not. Finally, former counsel apparently did not understand that, although a claim of inadequate notice was not time-barred, a claim of exceptional circumstances had to be made within 180 days, and prudence dictated that such a motion be filed.

A deportation or removal hearing often involves an individual's potential separation from family, home, employment, and community, and, in some cases, his or her very freedom and liberty. The respondent did not receive notice of his rescheduled, continued deportation hearing and then did not seek to rescind the resulting in absentia deportation order on "exceptional circumstances" grounds within the 180-day time period provided by statute due to circumstances entirely beyond his control. He should not be

denied his day in court unless absolutely mandated or voluntarily waived.

The Board has long frowned upon the ready dismissal of a respondent's claims based on technicalities. *See Matter of Martinez-Solis*, 14 I&N Dec. 93, 95 (BIA 1972) (holding that a contested deportation hearing is a "quest for truth," not a sporting event); *Matter of K-H-C-,* 5 I&N Dec. 312, 314 (BIA 1953). The propriety of an in absentia deportation order in response to the respondent's failure to appear must be based on the totality of the factual circumstances, in the context of all of the statutory provisions pertaining to issuance of in absentia deportation orders and related constitutional due process protections.[1] *See Matter of J-P-*, 22 I&N Dec. 33 (BIA 1998).

Comparing sections 242B(c)(1) and 242B(c)(3)(A) and (B) of the Act, I find that the language of these subsections of the statute provides three related, but independent bases that support sustaining the respondent's appeal and granting his motion to reopen. First, the respondent did not "receive notice in accordance with section (a)(2)" as required by the statute. Section 242B(c)(3)(B) of the Act. Second, the respondent's former attorney failed to provide him with proper notice as contemplated by the statute, regulations, administrative precedent, and generally accepted principles of effective representation in the context of an attorney-client relationship. Third, the attorney's obvious unfamiliarity or disregard of the provisions of section 242B pertaining to notice and "exceptional circumstances," and her failure to comply with the Board's requirements for establishing (her own) ineffective assistance of counsel and the statute's requirements for rescinding an in absentia deportation order under section 242B(c)(3)(A) by filing a timely motion to reopen on those grounds, *is* ineffective assistance of counsel that constitutes "exceptional circumstances."

Nevertheless, the majority declines to consider the motion before us as a "*notice*" motion as well as an "exceptional circumstances" motion under section 242B(c)(3) of the Act, despite the fact that it is premised both on the former attorney's ineffective counsel for failing to inform the respondent of his rescheduled hearing date, *and* on later failing to file a motion within 180 days to rescind the resulting deportation order. Furthermore, although it is clear that the attorney's failure to comply with the statutory deadline compounds her ineffective assistance (in not notifying the respondent of the rescheduled hearing date for which a certified mail receipt was signed by

---

[1]Deportation proceedings involve the potential deprivation of a significant liberty interest and must be conducted according to the principles of fundamental fairness and substantial justice. *See Landon v. Plasencia*, 459 U.S. 21, 34-35 (1982); *Goldberg v. Kelly*, 397 U.S. 254 (1970); *Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (stating that deportation "visits a great hardship on the individual. . . . Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987); *Harisiades v. Shaughnessy*, 342 U.S. 580 (1952); *Ng Fung Ho v. White*, 259 U.S. 276, 284 (1922),

her office staff), the majority construes such circumstances as absolutely impeding the respondent's ability to invoke the statute's "*exceptional circumstances*" ground as a basis for rescinding the in absentia order.

The majority's interpretation of the statute is contrary to principles of equity and is not a reasonable interpretation of the provision, as it forecloses any remedy for a respondent who exercised his right to counsel, but was the victim of ineffective assistance that both violated his basic right of notice and ignored the statute's jurisdictional requirements. This result is contrary to the statutory language and the guarantee of fairness and due process of law in deportation proceedings. Consequently, I dissent.

## I. FUNDAMENTAL FAIRNESS AND CONTROLLING CIRCUIT LAW

Our role in conducting rather than foreclosing hearings is emphasized by the United States Court of Appeals for the Ninth Circuit, in which this case arises, and is viewed as furthering the interests of due process. *See Baires v. INS*, 856 F.2d 89, 91 (9th Cir. 1988). Furthermore, other circuit courts of appeals that have addressed access to a deportation hearing under section 242B of the Act have indicated a concern with the Board's unnecessarily narrow, literal reading of the statutory in absentia provisions. *See, e.g., Romero-Morales v. INS*, 25 F.3d 125, 131 (2d Cir. 1994) (finding the Immigration Judge's "failure to examine the particulars of the case before him" in the context of "either issuing the in absentia ruling or denying the motion to reopen," which the Board affirmed, "disquieting"),

It is well established that "[a]n alien is entitled to due process under the Fifth Amendment in his deportation hearing." *Rios-Berrios v. INS*, 776 F.2d 859, 861 (9th Cir. 1985) (citing *United States v. Barraza-Leon*, 575 F.2d 218, 220 (9th Cir. 1978)).[2] In *Sharma v. INS*, 89 F.3d 545, 548 (9th Cir. 1996), the Ninth Circuit reaffirmed that "[d]ue process, in deportation proceedings, 'includes the right to a full and fair hearing.' *Getachew v. INS*, 25

---

[2]Let there be no mistake that, although we may not rule on he constitutionality of the statute we administer, the Board is authorized and expected to take due process considerations into account and to construe the statute to achieve a constitutional reading of its provisions. *See, e.g., Matter of G-*, 20 I&N Dec. 764, 780 (BIA 1993) (requiring administrative proceedings to conform to "basic notions of fundamental fairness") (citing *Hariasides v. Shaughnessy*, 342 U.S. 580 (1952)); *Matter of Hernandez-Puente*, 20 I&N Dec. 335, 339 (BIA 1991)(recognizing our authority to enforce an alien's procedural rights through determinations affecting deportability, discretionary relief, or other benefits under the Act); *Matter of Silva*, 16 I&N Dec. 26, 30 (BIA 1976) (exercising authority to adopt a construction of the statute that would ensure equal treatment of similarly situated aliens); *see also Yeung v. INS*, 76 F.3d 337 (11th Cir. 1995); *cf. Matter of Cenatice*, 16 I&N Dec. 162 (BIA 1977) (stating that the Board does not rule upon the constitutionality of the statutes we apply in our adjudications).

F.3d 841, 845 (9th Cir. 1994). Petitioners cannot complain of an order entered in absentia, however, if they '*voluntarily choose* not to attend a deportation hearing which may affect [them] adversely.' *United States v. Dekermenjian*, 508 F.2d 812, 814 (9th Cir.1974)." (Emphasis added.)

The right to be present at one's deportation hearing arises from the statutory language and from due process considerations that involve issues of personal liberty.[3] It also is related to the concern for reliability in deportation proceedings, which often involve highly complex facts regarding a respondent's attributes and activities and require the respondent's testimony to properly adjudicate the case. *See, e.g., Purba v. INS*, 884 F.2d 516, 517-18 (9th Cir. 1989) (holding that the statutory language of section 242(b), combined with significance of credibility determinations in deportation matters, supports a bright-line rule requiring physical presence before the Immigration Judge). In addition, although a respondent has no Sixth Amendment right to appointment of counsel at government expense, "due process mandates that he is entitled to counsel of his own choice at his own expense under terms of the Immigration and Nationality Act." *Rios-Berrios v. INS, supra*, at 861. As the Ninth Circuit has recognized, "Section 292 of the Act, 8 U.S.C. § 1362 (1982), makes that privilege explicit." *Id.; see also* section 292 of the Act.

It is difficult to imagine what could be more prejudicial to a respondent charged with being deportable from the United States than denial of an opportunity to be present at his deportation hearing where he might provide any defenses to the charges against him, or advance any claims he may have for relief from deportation. *See* Iris Gomez, *The Consequences of Nonappearance: Interpreting New Section 242B of the Immigration and Nationality Act*, 30 San Diego L. Rev. 75, 107-08 (1993); section 242(b) of the Act, 8 U.S.C. § 1252(b) (1994);[4] *see also Maldonado-Perez v. INS*, 865 F.2d 328, 333 (D.C. Cir. 1989) (holding that the Act implements constitutional requirements of a fair hearing).

Once an alien has been ordered deported in absentia, section 242B(c)(3) permits only two grounds for rescinding the order: either that the alien did not receive proper notice, or that certain defined "exceptional

---

[3]The right to appear is an essential liberty interest that may attach in the civil context. *See, e.g., Califano v. Yamasaki*, 442 U.S. 682 (1979) (extending the right to an oral hearing to social security overpayment recoupment proceedings); *Gagnon v. Scarpelli,* 411 U.S. 778 (1973) (implying the right to be present in probation revocation proceedings); *Morrissey v. Brewer*, 408 U.S. 471 (1972) (applying the right to be present in a parole revocation hearing); *Specht v. Patterson*, 386 U.S. 605 (1967) (upholding the right to be present in commitment proceedings).

[4]While section 242B of the Act contains specific provisions allowing an Immigration Judge to conduct a deportation proceeding in absentia, it did not repeal or replace the "reasonable" opportunity to be present found in section 242(b), *See Sharma v. INS, supra*, at 548.

circumstances" exist. The essence of a motion to reopen to rescind an in absentia order is that it is a request for discretionary action — as an exception to allowing an in absentia order to stand — in order to resolve a case fairly and justly. *See* section 242B(c)(3) (stating that an in absentia order "*may* be rescinded" only upon a showing that the "alien did not receive notice" or of "exceptional circumstances") (emphasis added). Such discretionary exceptions to the in absentia rule ensure that a deportation order is not issued in violation of the universally accepted principle of notice and an opportunity to be heard, and they favor individual consideration, not a blanket prohibition such as that contained in the majority opinion.

In my view, the majority errs in concluding that, under the terms of the statute, we do not have any latitude to find that an attorney's failure to notify the respondent to appear, followed by her failure to file a timely motion asserting exceptional circumstances attributable to such conduct, constitutes ineffective assistance of counsel amounting to a prejudicial violation of due process, which we may remedy by rescinding the deportation order and reopening the proceedings. *Baires v. INS, supra*, at 91 (holding that administrative expediency must give way to protection of fundamental rights); *Matter of W-F-*, 21 I&N Dec. 503 (BIA 1996) (Rosenberg, concurring and dissenting), In *Rios-Berrios v. INS, supra*, at 863-64, the Ninth Circuit stated, "We are not in favor of an agency treating the statutes and regulations by which it is governed as casually as it viewed them here. We will continue to take a close look at a claim such as that raised by petitioner, especially where so fundamental a question as right to counsel of one's choice is concerned." These principles are equally applicable to "so fundamental a question as" a respondent's right to notice and to be present at his deportation hearing.

## II. STATUTORY GROUNDS FOR GRANTING
## THE RESPONDENT'S MOTION

In addition to the constitutional considerations addressed above, my reasons for dissenting in light of the statutory language are threefold. First, I disagree with the majority's limited treatment of the motion before us as subject to the 180-day deadline under section 242B(c)(3)(A) of the Act, when it has been demonstrated that the respondent did not *receive* notice, under section 242B(c)(3)(B), which authorizes granting a motion to reopen based on failure of notice "at any time." Second, in the alternative, I find that rescission of the order is warranted based on the motion before us today, as it demonstrates clearly that — due to ineffective assistance of counsel — the respondent did not receive actual notice as the statute requires. *See* section 242B(c)(3)(B) of the Act; *see also Matter of N-K- & V-S-*, 21 I&N Dec. 879 (BIA 1997)(finding that failure to provide proper

notice constitutes ineffective assistance of counsel).

Third, I disagree with the majority's limited interpretation of the effect of ineffective assistance of counsel. *See Matter of Grijalva*, 21 I&N Dec. 472 (BIA 1996) (finding that a respondent who did not receive proper notice from his attorney and who has complied with the procedural requirements of *Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988), has established ineffective assistance of counsel based on "exceptional circumstances," warranting rescission of an in absentia order). Our decision in *Grijalva* neither forecloses rescission "at any time" when failure to appear is based on lack of receipt of notice due to ineffective counsel, nor does it prohibit rescission when ineffective assistance of counsel results in counsel's failure to file a timely motion under section 242B(c)(3)(A). It is unreasonable to read the statutory deadline to preclude any and all remedies to rescission of an order that was entered unfairly, particularly when acceptable alternatives exist to preserve the respondent's access to a hearing.

As I have noted in several published dissents, neither the statutory language nor the legislative history supports an interpretation of the statute that renders section 242B(c) of the Act as more a penalty provision than a deliberate measure to achieve prompt determinations and closure in the cases of deportable aliens. The overriding objective of Congress in enacting section 545 of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5061-67, was to bring aliens to their hearings, and the legislative history does not contain a punitive intent. *See generally* Gomez, *supra,* at part II.B (1993) (stating that S. 358, a later Conference Committee report incorporated certain previously excluded enforcement provisions to ensure that aliens were properly notified and in fact would appear for their hearings).

A. Failure of Proper Notice Based on the Plain Language of the Statute

The statute authorizes rescission when a respondent demonstrates that he has not *received* notice. *See* section 242B(c)(3)(B) of the Act. The verb used in section 242B(a)(2) — to "give" — and the verb used in section 242B(c)(3)(B) of the Act — to "receive" — are distinct. *See also* section 242B(a)(1) (using the verb "give"), Similarly, the verb used in section 242B(c)(1) — to "provide" is different from the verb to "receive," as used in section 242B(c)(3)(B),

Section 242B(c)(1) of the Act states in relevant part that an alien who does not attend a proceeding "*after written notice required under subsection (a)(2) has been provided to the alien or the alien's counsel of record*" shall be ordered deported in absentia "if the Service establishes by clear, unequivocal, and convincing evidence *that the written notice was so provided.*" (Emphasis added.) By contrast, section 242B(c)(3)(B) states that an in absentia order may be rescinded, "at any time if the alien demon-

123

strates *that the alien did not receive notice* in accordance with subsection (a)(2)." (Emphasis added.) Thus, according to section 242B(c)(3)(B), notice that was "provided" to the respondent's attorney but not to the respondent (that otherwise might satisfy the requirements of section 242B(a)(2) for purposes of showing that notice was "given") does not preclude rescission and reopening when, as here, the respondent did not *receive* notice. *See* section 242B(c)(3)(B) of the Act; *cf.* sections 242B(a)(2), (c)(1); *see also Matter of Grijalva*, 21 I&N Dec. 27 (recognizing that provision of notice might be challenged on the basis that notice was never received).

It may be true that to "give" is *better* than to "receive," but no matter how that moral question is resolved, it cannot be denied that to "give" is *different* from to "receive." First, the act of "giving" or "providing" notice refers to the conduct of one party or entity involved in the event in question, while the state of "receiving" does not involve active conduct and refers to the situation of another party to the proceedings. Second, in the context of these particular subsections of the statute, certified mail service that is given or provided to the respondent's counsel — even if deemed to be "received" by counsel — is not the type of notice that can be said to be "receive[d]" by the alien "in accordance with subsection (a)(2)" under section 242B(c)(3)(B) (referring to section 242B(a)(2)), *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950) (holding that "[a]n elementary and fundamental requirement of due process in any proceeding . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").[5]

The language of section 242B(c)(1) of the Act that refers to an alien being "provided" notice refers to the broad language found in section 242B(a)(2), which addresses compliance with due process on the basis that notice was "given." In the event that "personal service [on the alien] is not practicable," section 242B(a)(2) allows us to rely on the presumption of regularity of mail delivery to the respondent, or if the respondent is represented, on notice to counsel, as constituting service of notice on "the alien." *See Matter of Grijalva*, 21 I&N Dec. 27; *cf. Matter of Huete*, 20 I&N Dec. 250 (BIA 1991) (recognizing that the respondent cannot comply with his initial

---

[5]Subsequent interpretations of *Mullane v. Central Hanover Bank & Trust Co., supra,* that do not require receipt of notice are inapplicable here, as the statute specifically provides for rescission where the respondent *demonstrates* that he did not receive notice for purposes of a motion to rescind under section 242(b)(c)(3)(B), *Cf. United States v. Perez-Valdera*, 899 F. Supp. 181, 184 (S.D.N.Y. 1995) (noting that receipt was not required); *cf. also United States v. Estrada-Trochez*, 66 F.3d 733, 735 (5th Cir. 1995) (finding that section 242(b) was satisfied by a 1987 notice sent by first-class mail that was returned because the alien provided no forwarding address),

statutory obligation unless he receives actual notice of the Order to Show Cause, which commences the hearing). By contrast, the language of section 242B(c)(3)(B) does not refer simply to section 242B(a)(2), but modifies the language of that subsection to require that "the alien" must "receive notice" in accordance with section 242B(a)(2).

Congress' use of two different terms in two subsections of the same statute must be construed in a manner that gives each independent effect. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, (1987). The meaning of section 242B(c)(3)(B) is clear; it is neither ambiguous, nor satisfactorily implemented by a regulation equating service on an alien's representative with service on the alien. *Cf.* 8 C.F.R. § 292.5(a) (1997) (stating only that when a person is required to *give* or be given notice or to *serve* or be served with notice, service on an attorney satisfies the requirement, *but not addressing a statutory requirement that notice be received)*, "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984). Where Congress' intent is clearly enacted in unambiguous language, that language is conclusive. *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993); *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982).

Congress must be deemed to be aware of the difference between giving and receiving. Furthermore, as the parenthetical clause in the sentence of section 242B(a)(2) that is referred to in section 242B(c)(3)(B) indicates, Congress was well aware of how to draft this alternate method of service by proxy if it so chose, "To determine the plain meaning and purpose of a portion of a statute, we must examine not only the specific provisions at issue, but also the structure of the law as a whole including its object and policy." *Almero v. INS*, 18 F.3d 757, 760 (9th Cir. 1994); *see also Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.*, 489 U.S. 561 (1989) (stating that "whole statute" interpretation dictates that statutory sections should be read in harmony to achieve a harmonious whole); *In re Bonner Mall Partnership*, 2 F.3d 899 (9th Cir. 1993); *Matter of W-F-, supra (citing K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)(ruling that a construction of the statutory language which takes into account the design of the statute as a whole is preferred)).

In section 242B(c)(3)(B) of the statute, Congress unambiguously provided that rescission may be appropriate where the respondent demonstrates that he did not receive notice to appear. Although section 242B(c)(1) and the subsections preceding it permit proceedings to be conducted on the presumption that notice is received by requiring only that notice be "given," section 242B(c)(3) — which preserves the fundamental guarantee of due process such as notice in such proceedings — invokes the more stringent standard when a respondent claims he did not actually "receive" such

notice. We must read and give meaning to the language of these subsections taken together. So read, the statute indicates expressly that when the presumption that such notice was given is challenged by evidence that indicates that actual notice has not been *received by the respondent*, rescission of a deportation order entered in the respondent's absence is necessary.

### B. Violation of (Competent) Counsel's Duty to Provide Notice

As a corollary to the above reading of the statutory language, I find it appropriate to consider the role of retained counsel in relation to the statutory scheme concerning notice to the respondent. This is even more important if my first point — that the statutory language is plain and reading it to provide expressly for actual "receipt" of notice by the respondent is harmonious with the statute as a whole — is subject to doubt. Although the statute addresses the role of counsel to a limited extent, stating that if personal service on the respondent is not practicable, service by certified mail may be made on counsel, it is silent regarding circumstances in which notice to counsel is, in reality, not equivalent to notice to the respondent. Therefore, the second point to be addressed is counsel's ineffective representation as impeding notice as required by the statute.

Counsel is expected to represent the interests of her client, and under the provisions of section 242B of the Act, failure to notify the respondent when and where to appear after an attorney has been notified, and failure to advise the respondent of the severe consequences and few cures associated with a failure to appear, most certainly constitutes ineffective assistance of counsel on the merits. *See Strickland v. Washington*, 466 U.S. 668**,** 687, 690 (1984) (holding that "the proper standard for attorney performance is that of reasonably effective assistance" and determining "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . keep[ing] in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case"),

We have held that when an attorney fails to provide proper notice to her client, such ineffective assistance of counsel constitutes "exceptional circumstances" within the meaning of section 242B(c)(3)(B) of the Act. *See, e.g., Matter of Grijalva*, 21 I&N Dec. 472 (holding that circumstances in which improper notice from counsel frustrated a respondent's opportunity to appear before the Immigration Judge demonstrated ineffective assistance of counsel and rendered an order issued in the subsequent proceeding an unfair one that should not stand).[6] In addition, the Board has ruled that

---

[6]In *Matter of Lozada,* 19 I&N Dec. 637 (BIA 1988), *aff'd,* 857 F.2d 10 (1st Cir. 1988), we required the respondent to demonstrate — over and above malfeasance or nonfeasance on the merits — the terms of his agreement with his attorney, that he notified the attorney of his

reopening of deportation proceedings is required when, because of ineffective assistance of counsel, "the alien was prevented from reasonably presenting his case." *Matter of Lozada*, *supra*, at 638.[7]

The record before us reflects on its face that former counsel (who was well aware that the respondent was a lawful permanent resident subject to a condition, the removal of which was the subject of the deportation hearing) had received notice of the continued hearing, inasmuch as the notice was sent by certified mail and was signed for by someone purportedly at the location indicated on former counsel's pleadings. Both the statute and the regulations provide that, colloquially speaking, when a respondent is represented by counsel, notice to counsel is notice to the respondent. *See* sections 242B(a)(2), (c)(1) of the Act; *see also* 8 C.F.R. §§ 3.26, 292.5 (1997),

I note that we deem counsel adequate to accept service and to make binding representations on a client's behalf. *See* 8 C.F.R. § 292; *see also Matter of Velasquez*, 19 I&N Dec. 377 (BIA 1986) (holding that counsel's admission and concession of his client's deportability is binding on a respondent). We ought to, similarly, acknowledge that counsel's *failure to notify* the respondent, when she is treated by the regulations and the statute as the respondent's proxy, not only constitutes a breach of her duty and establishes ineffective assistance of counsel, but results in a failure of notice under the explicit language of section 242B(c)(3)(A) of the Act. *Strickland v. Washington, supra.*

In *Matter of Grijalva,* 21 I&N Dec. 27 at 30, we acknowledged specifically that "[t]he enactment of section 242B responds to some of the concerns raised in an October 1989 United States General Accounting Office ('GAO') report on delays in the deportation process and the substantial number of aliens who fail to appear for their scheduled deportation hearings. The . . . report . . . recommended several solutions to this problem, including developing procedures to improve the notification process . . . ."

---

complaint, and that he filed a grievance with the state licensing entity or provided an explanation for not doing so ("*Lozada* test"), In the instant case, the former attorney acknowledged the breach of her agreement to effectively represent the respondent by notifying him of his hearing date and her failure to properly represent him by filing a motion to reopen that either established that he did not receive actual notice due to ineffective assistance of counsel or alleged exceptional circumstances within the statutory deadline. Unlike dissenting Chairman Paul W. Schmidt, I find these admissions not only constitute compliance with the first two prongs of the "Lozada test" but satisfy the third prong's "explanation" alternative in lieu of filing a bar complaint.

[7]Ineffective assistance of counsel that has prevented hearing the merits of a case altogether has been treated differently from ineffective assistance of counsel that resulted, rather, in poor presentation of a case or a disastrous strategy. *Cf. Magallanes-Damian v. INS*, 783 F.2d 931 (9th Cir. 1986); *see also Thorsteinsson v. INS*, 724 F.2d 1365 (9th Cir.), *cert. denied*, 467 U.S. 1205 (1984)(rejecting an ineffective assistance claim when the attorney had made an informed, strategic decision in litigation).

*Id.* at 30 (citations omitted). Mindful of our inability to guarantee notice in each and every case, we held that effective notice by the Immigration Court was *presumed* by proper delivery, but provided that this presumption could be overcome by an affirmative defense in the form of documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery or that nondelivery was not attributable to the respondent. *Id.*

Congress' emphasis on fair and proper notice as part and parcel of its objective to see that hearings were convened, conducted, and completed could not be more clear.[8] The amendments to the statute in 1990 did not merely impose more severe sanctions for failure to appear at deportation hearings and other points in the removal process. These amendments attached more stringent and exacting *notice* requirements to deportation proceedings than had existed previously. For example, according to the statute, an in absentia deportation order may be issued only upon clear, unequivocal, and convincing evidence, introduced by the Service, that the respondent had notice of the hearing and failed to attend, as well as that the respondent is deportable by evidence which is clear, unequivocal, and convincing. *See* section 242B(c)(1) of the Act. The evidence before us includes the respondent's statement that he never received notice from his former attorney or from any other source, and statements submitted by former counsel substantiate this fact. These circumstances amount to a failure of notice under section 242B(c)(3)(A) of the Act due to ineffective assistance of counsel.

### C. Ineffective Assistance of Counsel as "Exceptional Circumstances"

Under circumstances in which notice was provided to respondent's counsel, but she did not inform him of the notice, neither nonfeasance nor malfeasance on her part should be allowed to prejudice the respondent's

---

[8]Although I view the difference in wording as a clear indication of Congress' intent to insure that a respondent is not deported in absentia when *he* did not *receive* notice of his hearings, I note, in addition, that the Ninth Circuit has cautioned that the meaning given to words in a statute must comport with legislative intent. *See United States v. Alvarez-Sanchez,* 975 F.2d 1396, 1400 (9th Cir. 1992), *rev'd on other grounds,* 511 U.S. 350 (1994) (stating that courts should not "make a fetish of construing statutes in a literal fashion," but should see their role as "that of perceptive diviner of congressional intent") (citing *United States v. Monia,* 317 U.S. 424, 431 (1943) (Frankfurter, J., dissenting) ("The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification.")); *see also United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989) (finding that the plain meaning of an unambiguous provision controlling, except in the "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters'" (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982))).

right to a hearing.[9] According to the statute and to our regulations, respondent's former counsel was charged with the responsibility of notifying him of any continued or rescheduled hearing for which she received notice in his stead. According to the record, it is undisputed that she did not do so. Consequently, I conclude that, on the merits, the respondent has demonstrated "exceptional circumstances" for his failure to appear.

It is important to note the centrality of notice in cases decided under section 242B, and the continuing emphasis in the statute on a reasonable opportunity to be present. In *Fuentes-Argueta v. INS*, 101 F.3d 867 (2d Cir. 1996), the court recognized that "without repealing § 242(b), Congress amended the Act to add § 242B, a more stringent provision requiring (rather than merely permitting) the IJ to issue in absentia orders of deportation where the INS establishes deportability by 'clear, unequivocal, and convincing evidence.'" *Id.* at 871 (citing *Romero-Morales v. INS, supra, at 128*), The court also stated: "[A]mong the differences between § 242(b) and § 242B, the latter sets forth a stricter notice requirement. *See United States v. Perez-Valdera*, 899 F. Supp. 181, 185 (S.D.N.Y. 1995) (observing that, because consequences of alien's failure to appear are more severe under § 242B, notice requirements under that section were 'strengthened')." *Fuentes-Argueta v. INS, supra*, at 870.

Neither a statute nor a regulation can be read as operating to deny the respondent notice of his deportation hearing and be upheld as constitutional. I believe it is improper to refuse the respondent his day in court when it is plain on the face of the record that counsel's reckless disregard, negligence, good faith error, or any other explanation for her failure to act is responsible for the respondent's failure to appear, and for her failure to file a motion explicitly claiming exceptional circumstances under section 242B(c)(3)(A) within the statutory deadline.

To read the statute as foreclosing a motion to reopen to rescind an in absentia order when the exceptional circumstances claimed are that counsel was ineffective in not notifying the respondent of his hearing, and that she perpetuated her ineffectiveness by failing to file a timely motion to rescind, unreasonably frustrates the operation of the statutory provision for an entire subclass of cases in which we would have found exceptional circumstances

---

[9]Notwithstanding our decision in *Matter of Lozada, supra*, the touchstone of fairness in relation to counsel is not whether one has complied technically with the three-prong "*Lozada* test," but whether one has been deprived of due process. *See Committee of Central American Refugees v. INS*, 795 F.2d 1434, 1439 (9th Cir. 1986) (citing *Vides-Vides v. INS*, 783 F.2d 1463, 1469-70 (9th Cir. 1986)). Therefore, the "*Lozada* test" is, or should be, no more than a guideline or mechanism to facilitate consideration of valid claims involving the denial of due process resulting from ineffective assistance of counsel. When the mechanism fails to facilitate, but instead swallows, the objective, the mechanism must be deemed faulty and itself ineffective.

under our decision in *Matter of Grijalva*, 21 I&N Dec. 472. Given that Congress has not plainly indicated an intent to foreclose motions that rest on "exceptional circumstances" alleged to constitute not only the reason for a respondent's failure to appear, but the reason for his failing to meet the filing deadline contained in section 242B(c)(3)(B), the majority's interpretation is inconsistent with the statute's purpose of affording rescission of orders of deportation that were entered in the respondent's absence, despite "compelling reasons beyond the control of the alien." *Id.; see also Romero v. INS*, 39 F.3d 977, 981 (9th Cir. 1994) (citing *United States v. Witkovich,* 353 U.S. 194 (1957) (rejecting an interpretation of a statute affecting the liberty interests of aliens that would raise doubts as to the statute's validity, based on the "'cardinal principle'" favoring adoption of a construction of the statute "'by which the [constitutional] question may be avoided'" (quoting *Crowell v. Benson*, 285 U.S. 22, 62 (1932))).

Furthermore, it is self-evident that the respondent's loss of an opportunity to present his defenses to deportation and his claims for discretionary relief from deportation before the Immigration Judge, as a result of the operation of section 242B(c)(1), constitutes prejudice. *Cf. Matter of Santos*, 19 I&N Dec. 105 (BIA 1984); *cf. also Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993) (holding no showing of prejudice required where a fundamental right is at stake), *cert. denied*, 513 U.S. 1014 (1994); *Sewak v. INS*, 900 F.2d 667, 670 n.7 (3d Cir. 1990) (rejecting harmless error doctrine where respondent did not receive notice of hearing); *Shahandah-Pey v. INS,* 831 F.2d 1384, 1389 (7th Cir. 1987) (finding prejudice in violation of procedural protection if it "had the potential for affecting the outcome" of the hearing); *Colindres-Aguilar v. INS*, 819 F.2d 259 (9th Cir. 1987) (finding prejudice not harmless where counsel could have better marshaled facts in asylum case and sought voluntary departure); *Paul v. INS*, 521 F.2d 194, 197 (5th Cir. 1975) (concluding that since it was the attorney who caused the hearing to be fundamentally unfair, the result of that hearing cannot be permitted to stand),

## III. EQUITABLE RELIEF REQUIRED TO ENSURE FAIR TREATMENT

Admittedly, the statute forecloses rescission when an alien files a motion based on exceptional circumstances for failure to appear after the expiration of the 180-day filing period designated by the statute. But, the statute does not address squarely the situation before us, in which the failure to file a motion within the 180-day period *itself* is attributable to ineffective counsel, which is the same basis for the claim of "exceptional circumstances" for failure to appear under section 242B(c)(3)(B) due to the fact that the respondent did not receive notice of the hearing. Furthermore, both judicial and administrative authority allows us to avoid imposing a

statutory bar when due process has been violated and to cure various defects in proceedings, if such treatment would equitably resolve a case. *See Batanic v. INS*, 12 F.3d 662, 667 (7th Cir. 1993); *Matter of Garcia*, 21 I&N Dec. 254 (BIA 1996); *see also Matter of Lok*, 18 I&N Dec. 101, 107 (BIA 1981), *aff'd*, 681 F.2d 107 (2d Cir. 1982); *Matter of Vrettakos*, 14 I&N Dec. 593 (BIA 1973, A.G. 1974).

In *Singh v. Waters*, 87 F.3d 346, 346-347 (9th Cir. 1996), the Ninth Circuit stated that to ensure the fair treatment of aliens within our borders,

> Congress has created immigration judges, who, although they do not have the security of life tenure, are intended to act as *judges* — that is, as persons fearlessly and impartially applying the laws of the United States to the agency to which they are assigned; and whose orders are to be obeyed by such agency as the orders of other judges of the United States are to be obeyed. *See* 8 U.S.C. § 1252(b).

This message applies no less to our resolution of appeals from the decisions of Immigration Judges. Yet, the majority contends that the issue presented is simply whether there exists a statutory exception to the requirement that a motion to rescind on the grounds of exceptional circumstances must be filed within 180 days of the in absentia order, and it concludes that no such exception exists. That construction of the statute, however, begs the question. It not only avoids the failure of notice ground discussed above, but rests on a rigid reading of the language contrary to our own understanding of the significance of ineffective assistance of counsel and its relationship to a fair hearing process.

Clearly, Congress contemplated enforcement of the statutory language. Nevertheless, an order resulting from ineffective assistance of counsel is no more acceptable than it would be otherwise, merely because former counsel failed to assert such ineffectiveness within the statutory 180-day period provided for a motion to rescind. As stated above, we are charged with giving effect to Congress' intentions in a manner that comports with constitutional principles. Thus, I believe we must consider what permissible alternatives exist that can accommodate enforcement of the statute without compromising due process.

Even if the majority persists in refusing to construe the respondent's motion as one raising failure of notice — to which no statutory time limitation is tied — the majority unreasonably declines to exercise our residual administrative authority to ameliorate the undeniable exceptional circumstances that flow from former counsel's multiple errors. *Cf. Matter of Grijalva*, 21 I&N Dec. 472. Our authority to construe the statute as permitting us to consider an "exceptional circumstances" motion after the passage of 180 days when the claim is ineffective assistance of counsel for failing to file a motion to rescind before the statutory period passes has not been foreclosed by Congress or by the Attorney General and is supported by judicial decisions. In the face of such a blatant due process violation, a statuto-

131

ry provision that might otherwise preclude us from acting need not limit our ability to restore the respondent to the position he would have held but for that violation. *See Snajder v. INS,* 29 F.3d 1203, 1207-08 (7th Cir. 1994),

The extension of equitable relief in the context of statutory and discretionary aspects of deportation proceedings has long been accepted as within the province of the Board to fashion. We have invoked such authority historically by designating certain determinations made on the basis of our authority to achieve an equitable result as being effective "nunc pro tunc." *See Black's Law Dictionary* 1069 (6th ed. 1990); *Matter of Garcia, supra* (Guendelsberger, joined by Schmidt, dissenting); *see also Matter of L-*, 1 I&N Dec. 1, 5 (BIA, A.G. 1940) (finding, in the first case decided by the Board under the delegated authority of the Attorney General, that it would be capricious to conclude that "the technical form of the proceedings" determined the result). Furthermore, we have found nunc pro tunc relief appropriate in cases going back for more than 50 years, even prior to the enactment of the Immigration and Nationality Act of 1952, ch. 477, 66 Stat. 163. *Matter of Garcia, supra* (citing *Matter of S-N-*, 6 I&N Dec. 73, 76 (BIA, A.G. 1954) (reporting the Attorney General's ruling that the 1952 Act provided no reason to abandon or reverse the practice of affording relief nunc pro tunc)),

We have exercised our administrative authority periodically to enter nunc pro tunc determinations that achieve equitable results serving the interests of the agency and the individual alike. As I discussed in *Matter of Yeung*, 21 I&N Dec. 610 (BIA 1996; 1997) (Rosenberg, dissenting), such action has been invoked as a justice-based remedy in which "'complete justice to an alien dictates such an extraordinary action'" and "'the record before us presents many sympathetic and mitigating factors.'" *Id.* at 623 (quoting *Matter of T-*, 6 I&N Dec. 410, 412 (BIA 1954) (considering whether an application filed under the 1917 Act was subject to the terms of the 1952 Act)). Furthermore, we have taken such action as an efficiency-based remedy, in which nunc pro tunc relief was warranted to achieve an appropriate and necessary disposition of the case. *Matter of Vrettakos, supra*, at 599 (BIA 1973, A.G. 1974); *see also Matter of Ng*, 17 I&N Dec. 63 (BIA 1979); *Matter of Ducret*, 15 I&N Dec. 620 (BIA 1976); *Matter of Rapacon*, 14 I&N Dec. 375 (R.C. 1973); *Matter of Farinas*, 12 I&N Dec. 467 (BIA 1967); *cf. Matter of C-*, 20 I&N Dec. 529, 531 (BIA 1992) (rejecting the argument that an asylum application should be deemed constructively filed prior to the amended statute's effective date, where there was no showing that fundamental rights were abridged or that the applicant would benefit).

Nunc pro tunc relief is not restricted to the above cited situations by statute, agency definition or policy, or generally accepted principles of jurisprudence. Ordinarily, when a situation occurs in which an alleged procedural error is made — ranging from a mistranslation attributable to a

court interpreter, to the inappropriate exclusion of evidence, to failure to advise of the right to counsel — such errors are cured by simply holding a new hearing "in compliance with due process requirements," which restores the wronged applicant to the position in which he found himself prior to the procedural error. *Batanic v. INS, supra*, at 667; *see also Rabiu v. INS*, 41 F.3d 879, 882-84 (2d Cir. 1994) (finding ineffective counsel's failure to file a timely application for a waiver to violate the respondent's rights and require reopening); *Shahandeh-Pey v. INS, supra*, at 1390 (remanding to allow an alien denied the opportunity to present evidence and to "have his day in court" and present all of his evidence in support of his application for asylum in lieu of deportation).

Violations of procedural due process generally "call for the prophylactic remedy of vacating the order of deportation and for writing thereafter on a clean slate." *Castaneda-Delgado v. INS*, 525 F.2d 1295, 1302 (7th Cir. 1975); *see also Matter of Santos, supra* (requiring that such procedural violations are prejudicial). When holding another hearing does not cure the defect in the prior  proceeding or make the prejudiced applicant "whole," however, we are forced to look beyond such routine remedies.

There is no question but that the respondent's motion claiming exceptional circumstances — ineffective assistance of counsel — was not filed within 180 days because of ineffective assistance of the same counsel. If we insist on limiting his motion to one asserting only "exceptional circumstances," we must consider nunc pro tunc relief. *Batanic v. INS*, *supra* (holding that where denial of the right to counsel deprived the respondent of his right to apply for asylum, counsel's ability to protect the respondent's rights in a reconvened hearing must include the ability to apply for asylum nunc pro tunc). In particular, "*when the procedural defect has also resulted in the loss of an opportunity for statutory  relief*," the demands of due process require more than merely reconvening the hearing. *Id.* at 667 (emphasis added). When a violation of due process results in a denial of a fair hearing on the question of eligibility for discretionary relief, the respondent should be afforded the opportunity for consideration of his claim based upon the law as it existed at the time he was deprived of his rights. *Snajder v. INS, supra*, at 1208 n.12.

The process due the respondent — an opportunity to present his motion for consideration pursuant to section 242B(c)(3) of the statute, in light of our ruling in *Matter of Grijalva*, 21 I&N Dec. 472 — has not become moot, as the majority suggests, due to expiration of the 180-day statutory period. Instead, the process due the respondent requires that the respondent be given the advantage of the exceptional circumstances grounds available under the statute when his counsel filed a motion to reopen based on notice, and failed to include the equally applicable exceptional circumstances grounds, and when, after rejection of that motion, she failed to file a timely motion claiming exceptional circumstances. To refuse to recognize inef-

fective assistance of counsel when that ineffective assistance itself is the cause for a tardy filing of a motion to rescind on such grounds, unreasonably limits our holding in *Matter of Grijalva*, and results in a denial of due process. In other words, in fairness, since it was his counsel's error that caused the 180-day deadline to pass without a proper motion having been filed, the respondent should "be given the advantage of the law that existed when his first hearing was held." *Batanic v. INS, supra*, at 668.

## IV. CONCLUSION

In summary, I find that although sections 242B(a)(1) and (2) of the Act require only that written notice be "given" to a respondent (and that if personal service is not practicable, it may "be given" by certified mail to the respondent or his counsel), the notice provision in section 242B(c)(3)(B) specifically requires that such written notice is "*receive[d]*" by the respondent. On the facts presented, I would find that the respondent has established ineffective representation compromising his rights to proper notice of his deportation hearing, as well as constituting exceptional circumstances, amounting to a violation of due process in either case. *Baires v. INS, supra.*

Reading the statute to allow rescission "at any time" when the respondent demonstrates that he has not actually received notice of a rescheduled hearing is consistent with the statute's plain language and with our precedent. *See* 242B(c)(3)(B) (requiring that notice is "received"); *Matter of Grijalva*, 21 I&N Dec. 27 (allowing rebuttal of the presumption of effective service when the statute requires only that notice "shall be given"). Furthermore, viewing the failure to advise the respondent of the proper hearing date as ineffective assistance of counsel that constitutes "exceptional circumstances" under the statute, as we do in *Matter of Grijalva,* 21 I&N Dec. 472, does not preclude conceiving of ineffective counsel as violating the statutory notice requirements.

Contrary to the conclusion drawn by the majority, it is not appropriate to ignore or limit the plain terms of section 242B(c)(3)(B).

If the respondent was not provided with and did not receive  actual notice of his rescheduled hearing, it is an abuse of our discretion to refuse to rescind the Immigration Judge's order of deportation and reopen the respondent's hearing. A fair evaluation of the "totality of the circumstances," as contemplated by Congress when section 242B was enacted, compels the conclusion that the respondent is entitled to a hearing at which he can present his defenses to deportation and any claims for discretionary relief or other benefits that he may wish to advance. *See Matter of Rivera*, 21 I&N Dec. 599 (BIA 1996) (Schmidt, dissenting, joined by Guendelsberger, Rosenberg, and Villageliu). Therefore, I would construe the instant motion under both subsections of section 242B(c)(3) and grant

it as a motion to rescind based on "notice," which can be considered "at any time." In the alternative, I would adjudicate the respondent's present motion nunc pro tunc and find that the ineffective assistance of former counsel in failing to timely file a motion under section 242B(c)(3)(A) constitutes "exceptional circumstances" and allows rescission outside the 180-day cutoff date for equitable reasons. I would do so primarily because such reconsideration is within our authority and justice so requires. I also would take such action because to fail to do so perpetuates a violation of the statute that I believe constitutes an error of constitutional proportions.

*CONCURRING AND DISSENTING OPINION:* John W. Guendelsberger, Board Member

I concur in part and dissent in part.

I concur with the majority's analysis regarding the respondent's inability to rescind the in absentia order of deportation under section 242B(c)(3)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3)(A) (1994), given the expiration of the 180-day time limitation for such motions. However, I would examine the respondent's eligibility to rescind under section 242B(c)(3)(B), for cases involving lack of notice. Although the applicability of this alternate avenue for rescission is not explicitly raised on appeal, the issue should be addressed, in light of the respondent's assertion that he never received notice of his hearing.

Section 242B(a)(2)(A) of the Act, which governs the method of providing notice in deportation proceedings, states in relevant part:

> Written notice shall be given in person to the alien (or, if personal service is not practicable, written notice shall be given by certified mail to the alien or to the alien's counsel of record, if any) . . . .

Section 242B(c)(1) of the Act sets forth the circumstances under which a hearing may be held in absentia:

> Consequences of failure to appear.—
>
> (1) In general.—Any alien who, after written notice required under subsection (a)(2) has been provided to the alien or the alien's counsel of record, does not attend a proceeding under section 242, shall be ordered deported under section 242(b)(1) in absentia if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is deportable.

In the instant case, the respondent's attorney was given written notice of the respondent's hearing by certified mail, in accordance with subsection (a)(2), Thus, the Immigration Judge properly held a hearing in absentia under subsection (c)(1), as notice was provided to "the alien's counsel of record." However, the fact that notice is provided in accordance with sec-

tion 242B(a)(2) of the Act does not conclusively resolve the issue of sufficiency of notice for the purposes of reopening to rescind under section 242B(c)(3)(B). That subsection provides, in pertinent part:

Rescission of order.—Such an order may be rescinded only—

. . .

(B) upon a motion to reopen filed at any time if the alien demonstrates that the alien did not receive notice in accordance with subsection (a)(2) . . . .

Notably, while subsection (c)(1) permits a hearing to be held in absentia where an alien fails to attend a proceeding "after written notice required under subsection (a)(2) has been provided *to the alien or alien's counsel*"(emphasis added), section 242B(c)(3)(B) permits an alien to rescind such an order where the alien can demonstrate that "*the alien* did not receive notice in accordance with subsection (a)(2)" (emphasis added). The difference in the statutory language between these two sections is significant. Congress could have used the same wording in both sections, but instead focused only upon *receipt by the alien* for purposes of rescission. This variance in the statutory language demonstrates that Congress intended for the alien, as opposed to the alien's counsel as agent, to have notice of his or her hearing for purposes of rescinding under section 242B(c)(3)(B). *See, e.g., INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (applying the principle of statutory construction that where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion). Therefore, even where the respondent's attorney is served with notice in accordance with subsection (a)(2), which is sufficient notice under subsection (c)(1) for purposes of conducting a hearing in absentia, the alien should still be permitted to rescind the order under subsection (c)(3)(B) upon demonstrating that "the alien did not receive notice."

Our decision in *Matter of Grijalva*, 21 I&N Dec. 27 (BIA 1995), involved a similar issue of lack of notice under section 242B(c)(3)(B) of the Act. In that case, the alien was served notice in accordance with section 242B(a)(2), by certified mail to the alien's last known address. The certified mail return receipt was returned as unclaimed, following notices of certified mail provided to the alien by the United States Postal Service. The Board held that where service of a notice of hearing in deportation proceedings is sent by certified mail through the United States Postal Service, and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises which may be overcome by the affirmative defense of nondelivery or improper delivery by the Postal Service. The alien asserted that he never received the notice of hearing or the notices

of certified mail from the Postal Service, and we remanded the case to allow the alien an opportunity to demonstrate nondelivery or improper delivery of the notice, through no fault of the alien. *Id.* at 37.

Although *Matter of Grijalva*, 21 I&N Dec. 27, involved service of written notice directly upon the alien, a similar opportunity to demonstrate nondelivery should be available in the situation presented in the instant case, in which written notice is mailed to the alien's attorney. Specifically, the alien should be allowed to demonstrate that his or her counsel failed to convey the notice of hearing to the alien.

Furthermore, this approach is not inconsistent with the regulation regarding representative capacity. That regulation, found at 8 C.F.R. § 292.5(a) (1997), provides in pertinent part that "[w]henever a person is required . . . to give or be given notice . . . such notice . . . shall be given by or to . . . the attorney or representative of record, or the person himself if unrepresented." This provision merely indicates *to whom* service is to be made and does not address whether such service is sufficient notice to the alien to preclude rescission under section 242B(c)(3)(B) of the Act.

Thus, while the Immigration Judge properly held an in absentia hearing, in light of the evidence that notice in accordance with subsection (a)(2) had been provided to the respondent's counsel, the respondent should not be precluded under subsection (c)(3)(B) from reopening and rescinding if he can establish lack of actual notice by showing that his attorney did not, in fact, communicate the notice of hearing to him, and that he therefore did not "receive notice" of his hearing. *See Matter of Lozada*, 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988) (prescribing standards for establishing ineffective assistance of counsel). Section 242B(c)(3) does not specify a 180-day limit upon such a motion if the alien demonstrates that he did not receive notice of the hearing.

*DISSENTING OPINION:* Paul W. Schmidt, Chairman

I respectfully dissent.

The uncontested evidence establishes that the respondent's former attorney failed to discharge her duty to notify the respondent of his deportation hearing date and failed herself to appear at the deportation hearing. That conduct resulted in the entry of an in absentia order of deportation against the respondent. Former counsel also admits that, through her unfamiliarity with the proper procedures, she was responsible for failing to file a legally sufficient motion to reopen seeking to rescind the in absentia order within the 180-day statutory time frame. A properly perfected motion should have resulted in reopening and rescission of the in absentia order under our decision in *Matter of Grijalva*, 21 I&N Dec. 472 (BIA 1996) (holding that ineffective assistance of counsel is an "exceptional circumstance" justifying reopening and rescission of an in absentia order).

137

I disagree with present counsel's attempt to argue that referral of this matter to the State Bar of California under our decision in *Matter of Lozada,* 19 I&N Dec. 637 (BIA 1988), *aff'd*, 857 F.2d 10 (1st Cir. 1988), is inappropriate because former counsel's conduct would not be a ground for discipline under those rules. First, the record contains ample uncontested evidence of former counsel's multiple acts of mishandling this case that tends to belie such a claim. Whether or not such conduct violates the Rules of Professional Conduct is a question that must be determined by the State Bar of California, not the respondent's present counsel.

Nevertheless, in this particular case, insistence on satisfaction of the *Lozada* requirement that the matter be referred to the State Bar as a prerequisite to our recognizing the ineffective assistance claim elevates form over substance. Even more than in *Matter of Rivera*, 21 I&N Dec. 599 (BIA 1996), a case in which I dissented, the record in the present case clearly establishes ineffective assistance of counsel. We can resolve the "defect" in *Lozada* compliance by either (1) serving a copy of our decision in this case on the State Bar of California, or (2) referring the matter to the Office of General Counsel of the Executive Office for Immigration Review for investigation of whether further referral to the State Bar or a referral under 8 C.F.R. § 292.3 (1997) (disciplinary regulations relating to immigration proceedings) is appropriate.[1] Failure to refer this particular matter to the State Bar is not an appropriate basis for us to decline to recognize the respondent's claim of ineffective assistance of counsel.

Because the respondent was deprived of his right to a deportation hearing through the ineffective assistance of counsel, I would reopen this matter sua sponte under 8 C.F.R. § 3.2(a) (1997) and rescind the in absentia order of deportation, notwithstanding the expiration of the 180-day period set forth in section 242B of the Immigration and Nationality Act, 8 U.S.C.

---

[1] I note that as a result of recently proposed changes in the rules relating to attorney discipline in proceedings before the Executive Office for Immigration Review ("EOIR"), it is possible that in the future there will be more effective means of dealing with the problem of ineffective assistance of counsel in the immigration context. *See* 63 Fed. Reg. 2901, 2906 (to be codified at 8 C.F.R. § 3.52(k)(proposed Jan. 20, 1998)). Under the proposed regulations, disciplinary investigations would be conducted by the EOIR General Counsel either in conjunction with, or independent of, action by a State bar and without involvement by the Immigration and Naturalization Service. Claims that are found to have merit upon investigation would be prosecuted before a Disciplinary Committee appointed by the Deputy Attorney General. This should solve, at least to a large extent, the problem of collusive claims of ineffective assistance by counsel that concerned the Board in *Matter of Rivera, supra.* While I do not suggest that isolated instances of negligence or error on the part of counsel should be a basis for discipline, attorneys who repeatedly fail to properly and competently represent the interests of their clients, or who file false admissions of negligence or incompetence to secure strategic benefits for their clients, should not be practicing before EOIR.

§ 1252b (1994), for reopening on the basis of exceptional circumstances. I agree with present counsel that, in the circumstances of this case, invoking the 180-day limit to absolutely bar a claim based on ineffective assistance of counsel raises serious constitutional due process issues. *See Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997) (stating that the Board may reopen on its own motion in exceptional circumstances); *cf. Romero-Morales v. INS*, 25 F.3d 125 (2d Cir. 1994) (cautioning against an overly mechanical application of section 242B).

Finally, I doubt that under the circumstances of this case the respondent can be found to have received legally sufficient notice of his deportation hearing time and place. That is a separate ground for reopening under section 242B(c)(3)(B) of the Act that is not subject to any time limitation.

For the foregoing reasons, I respectfully dissent from the denial of the respondent's motion.

*DISSENTING OPINION:* Gustavo D. Villageliu, Board Member

I respectfully join the dissents of Chairman Paul W. Schmidt and Board Members Lory D. Rosenberg and John W. Guendelsberger. I agree with their conclusion that section 242B(c)(3)(B) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3)(B) (1994), allows rescission of an in absentia deportation order at any time if the alien demonstrates that he did not receive notice of his deportation hearing due to ineffective assistance of counsel.